## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**JEFFREY K.,**[1]

      **Plaintiff,**

            **v.**

**LELAND DUDEK,**[2]
**Acting Commissioner of Social Security,**

      **Defendant.**

**Case No. 2:23-cv-2478**
**Magistrate Judge Norah McCann King**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Jeffrey K. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the decision.

## I.    PROCEDURAL HISTORY

On March 13, 2020, Plaintiff filed his application for benefits, alleging that he has been disabled since December 15, 2019. R. 77, 81, 206–05, 223–31. The application was denied

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Leland Dudek, the current Acting Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

initially and upon reconsideration. R. 88–93, 98–100. Plaintiff sought a *de novo* hearing before

an administrative law judge ("ALJ"). R. 134–54. ALJ Meryl Lissek held a hearing on July 14,

2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R.

52–76. In a decision dated December 10, 2021, the ALJ concluded that Plaintiff was not disabled

within the meaning of the Social Security Act from March 13, 2020, the date on which the

application was filed, through the date of that decision. R. 16–22. That decision became final

when the Appeals Council declined review on March 17, 2023. R. 1–9. Plaintiff timely filed this

appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 10, 2023, Plaintiff consented to

disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and

Rule 73 of the Federal Rules of Civil Procedure. ECF No. 7.[3] On February 16, 2024, the case

was reassigned to the undersigned. ECF No. 15. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §1383(c)(3). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. A court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a
comprehensive explanation for the rejection of evidence; in most cases, a sentence or short
paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent
such articulation, the Court "cannot tell if significant probative evidence was not credited or
simply ignored." *Id.* at 705. As the Third Circuit explains:

4

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

5

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 62 years old on March 13, 2020, the date on which his application was filed. R. 223. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 18.

At step two, the ALJ found that Plaintiff suffered from the following medically determinable impairments: degenerative disc disease; a disc herniation; hypertension; and arthritis. *Id*. The ALJ further found that Plaintiff's alleged major depressive disorder was not a medically determinable impairment. *Id*. The ALJ also found that Plaintiff did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months and, therefore, that Plaintiff did not have a severe impairment or combination of impairments. R. 18–21. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 13, 2020, the date on which Plaintiff's application was filed, through the date of the decision. R. 21–22.

Plaintiff disagrees with the ALJ's findings at step two and asks that the decision be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 13. The Acting Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 9.

### IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

#### A.    2019 MRI of the Lumbar Spine

Plaintiff underwent an MRI of his lumbar spine on February 27, 2019 ("2019 lumbar

spine MRI"). R. 352–53, 371–72 (duplicate). That examination revealed the following:

1.  L2-L3, annular disc bulge and bilateral facet hypertrophy efface the thecal sac with *mild* narrowing of the lateral recesses bilaterally and *mild* narrowing of the neural foramina bilaterally.

2.  L3-L4, a central annular tear is demonstrated. Annular disc bulge and bilateral facet hypertrophy efface the thecal sac with *mild* narrowing of the lateral recesses bilaterally and *mild* narrowing of the neural foramina bilaterally.

3.  L4-L5, annular disc bulge and bilateral facet hypertrophy efface the thecal sac with *moderate* narrowing of the lateral recesses bilaterally, *moderate* narrowing of the right neural foramen and *mild* narrowing of the left neural foramen. Disc bulge makes contact with the exiting right L4 nerve root and the traversing L5 nerve roots bilaterally.

4.  L5-S1, a left paracentral annular tear is demonstrated. Annular disc bulge and bilateral facet hypertrophy indent the anterior epidural space with *mild* narrowing of the lateral recesses bilaterally and *mild to moderate* narrowing of the neural foramina bilaterally.

5.  Straightening of lumbar lordosis. Correlate clinically for muscle spasm or muscle strain.

R. 353 (emphasis added), 371 (duplicate).

**B.      State Agency Reviewing Consultants**

Consultant Caroline Shubeck[4] conducted an initial review of Plaintiff's medical record on behalf of the state agency on September 10, 2020. R. 78–80. Consultant Shubeck concluded that "[t]here is insufficient evidence to rate claim[.]" R. 79; *see also id*. ("*SENT REQ FOR MER AND ADLS TO CLMT REP* AND THIRD PARTY. . . . IN[S]UFF EVIDE. NO ADLS NO MER. *CLMT NOT RESPONSIVE TO ATTEMPTS TO CONTACT*.") (emphasis in italics added).

Thereafter, the state agency received additional evidence, including, *inter alia*, a transthoracic echocardiogram taken in May 2018 and the record of an MRI of the left foot taken

---

[4] Other than a medical specialty code of "19 Internal Medicine," R. 80–81, this consultant's credentials do not appear in the record.

in April 2018 that revealed a heterogenous mass within the plantar medial soft tissues of the left

forefoot. R. 83. Plaintiff also provided an operative report, dated May 24, 2018, reflecting the

excision of a soft tissue mass from the forefoot, and the 2019 lumbar spine MRI. *Id*. A note dated

January 21, 2021, reflected that the state agency "attempted to call claimant, claimant's 3rd party

contact and attorney rep regarding return of ADL's. [N]o answer, left messages informing if no

response in 10 days a decision will be made with evidence in file *which may not be enough to*

*establish disability*." *Id*. (emphasis added).

Consultant Mary Ann Nicastro[5] reviewed Plaintiff's medical record upon reconsideration

for the state agency on February 3, 2021. R. 82–83. Consultant Nicastro commented that

additional evidence was needed but that Plaintiff had not cooperated:

> RECON AFFIRMATION. Additional evidence is needed to fully assess the
> severity of the claimant's condition but *the claimant has failed to cooperate*. See
> full documentation of procedures followed and attempts to obtain information in
> the Case Note section and the Impairment Severity section. Rating based on
> evidence in file is INSUFFICIENT EVIDENCE.

*Id*.; *see also id.* ("There is insufficient evidence to rate claim[.] Recon – I have reviewed all of

the evidence; MedEval is affirmed.").

## V.    DISCUSSION

Plaintiff contends that the ALJ erred when she denied Plaintiff's claim at step two of the

sequential evaluation by finding that Plaintiff suffered no severe impairment. *Plaintiff's Brief*,

ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 13. Plaintiff specifically argues that the record

establishes that his medically determinable impairments were severe; that the ALJ played doctor

and relied on her own lay opinion in concluding otherwise ; and that the ALJ did not satisfy her

---

[5] Other than a medical specialty code of "19 Internal Medicine," R. 83, this consultant's
credentials do not appear in the record.

duty to fairly and fully develop the record when she failed to order a consultative examination. *Id*. According to Plaintiff, the ALJ's errors in this regard are not harmless because the ALJ stopped the sequential evaluation at step two; had she continued the process and limited Plaintiff to light work, Plaintiff argues, he would have been deemed disabled. *Id*. The Acting Commissioner disagrees, arguing that substantial evidence supports the ALJ's denial of benefits at step two of the sequential evaluation process. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 9.

"The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). Therefore, "[t]he burden placed on an applicant at step two is not an exacting one." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "Although the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *Id*. (quoting SSR 85-28, 1985 WL 56856, at *3; citing *Newell*, 347 F.3d at 546). Courts must resolve any doubt as to whether this showing has been made in favor of the claimant. *Id*.; *see also Newell*, 347 F.3d at 547. While denying benefits at step two "is certain to raise a judicial eyebrow" because "step two is to be rarely utilized as a basis for the denial of benefits[,]" a reviewing court should not apply a more stringent standard of review in such cases because "a "denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." *McCrea*, 370 F.3d at 361.

In the present case, as previously discussed, the ALJ found at step two that Plaintiff had the medically determinable impairments of degenerative disc disease, a disc herniation,

hypertension, and arthritis, but nevertheless determined that Plaintiff did not have a severe impairment. R. 18–21. Plaintiff raises a number of challenges to that determination. He first addresses the ALJ's finding that Plaintiff's "lumbar impairment" was non-severe. *Plaintiff's Brief*, ECF No. 8, pp. 12–13, 15–16. Plaintiff specifically argues that his administrative hearing testimony—*i.e.,* that he stopped working in 2019 because of his back; that he can no longer perform odd jobs like cutting grass and cleaning cars; that back pain limits his ability to walk and to sit for more than one hour; and that he is limited to carrying a six-pack of soda—supports his claim that his lumbar spine impairment was severe. *Id*. at 12. Plaintiff also argues that the 2019 MRI of the lumbar spine, which reflected multilevel annular tears and disc protrusion, also establishes that the impairment was severe. *Id*. at 12–13. Plaintiff further contends that the ALJ's characterization of the results of this MRI as "mild" was improperly based on the ALJ's own lay opinion. *Id*. at 12–13, 15–16. Plaintiff goes on to argue that, although the ALJ acknowledged Plaintiff's testimony and the results of the 2019 MRI, the ALJ improperly failed to explain why this evidence failed to establish severity, resulting in reversible error. *Id*. at 13. Plaintiff's arguments are not well taken.

The ALJ expressly considered Plaintiff's hearing testimony, but ultimately concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entire consistent[,]" R. 20, a conclusion that Plaintiff does not appear to challenge. *Cf. Schmidt v. Comm'r Soc. Sec*., 465 F. App'x 193, 198 (3d Cir. 2012) (finding that the "ALJ explained his reasons for discrediting [the claimant's] subjective testimony and pointed to several objective medical findings that contradicted [the claimant's] subjective complaints" where the claimant underwent back surgery in 2007, and, thereafter, "there was objective medical evidence that did not support [the claimant's] subjective complaints of disabling pain[,]"

11

including, *inter alia*, that Plaintiff's two physicians "continued to prescribe conservative care throughout this period"). Plaintiff's reliance on such testimony therefore does not provide substantial support for his argument that his lumbar spine impairment was severe.

The ALJ also specifically discussed the 2019 MRI of the lumbar spine, noting that the procedure revealed "an annular disc bulge at L2-3 and L4-5 with mild to moderate narrowing and tears at L3-4 and L5-S1[,]" R. 20, and explained why she rejected the arguments of Plaintiff's counsel that this evidence established a severe impairment:

> Although the claimant's representative argues that based on the MRI in Exhibit 2F/13 that "it is more likely than not that this MRI would reasonably limit the claimant to light work" the undersigned does not find this to be supported by the objective imaging or consistent with the treatment record. The MRI shows only mild findings and was considered by DDS when they found that there was insufficient evidence to support a finding of a severe medically determinable impairment.[6] The undersigned notes that there is no evidence which demonstrates

---

[6] The ALJ further considered the reviewing state agency consultants' findings as follows:

> Accordingly, the undersigned finds that the conclusion that the claimant does not have an impairment or combination of impairments that significantly limits his ability to perform basic work activities is consistent with the objective medical evidence and other evidence detailed above. In making this determination, the undersigned has considered the medical opinions and prior administrative findings. Although the undersigned will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from your medical sources, the undersigned has fully considered all the medical opinions and prior administrative medical findings in this case. DDS opined that there was insufficient evidence to rate the claimant's claim for disability (Exhibits 2A and 4A). The undersigned notes that although new evidence was submitted in Exhibits 4F-6F, the undersigned finds that this evidence fails to change the outcome noted by DDS. The undersigned notes that Exhibit 6F contains the same findings in Exhibit 2F and Exhibits 4F and 5F do not warrant any significant limitations for the reason noted above. As such, the undersigned finds the opinion of DDS to be persuasive as they are consistent with the entire record and document that the claimant has only minimal treatment and only mild objective findings which do not warrant a determination that the claimant has a severe impairment.

R. 20–21. The ALJ's discussion of the state agency reviewing consultants' opinions directly refutes Plaintiff's suggestion that the ALJ relied on a mischaracterization of these opinions to

> that the claimant has had any significant treatment for his alleged impairments and
> his notes during examinations fail to document any impairments which are found
> to be severe.

R. 21. In other words, the ALJ specifically considered that the state agency reviewing

consultants' opinion that, despite the 2019 MRI, there was insufficient evidence to evaluate

Plaintiff's claim, and expressly noted that the objective medical record did not reflect this

condition—or any condition—as a severe impairment. *Id*.

In addition, reading the opinion and record as a whole, the Court cannot say that the ALJ

mischaracterized the 2019 MRI, nor did she improperly rely on her own lay opinion at step two.

R. 353, 371. Plaintiff insists that the record establishes a severe lumbar spine impairment; but the

ALJ accurately found that "[t]he record contains no treatment records regarding any follow-up or

any further complaints of back pain." R. 20; *see also id*. (noting further that Plaintiff was seen on

"July 23, 2020, for evaluation after a fall but he reported no issues with back, neck or joint pain

[]. He was documented to have full range of motion and a steady gait with normal 5/5 strength").

Notably, a mere diagnosis, without more, will not establish that Plaintiff's lumbar spine

impairment was severe; rather, Plaintiff "was required to present evidence that these limitations

significantly limited [his] ability to do basic work activities or impaired [his] capacity to cope

with the mental demands of working." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d

Cir. 2007) (citations omitted); *see also Glass v. Comm'r of Soc. Sec.*, No. CV 18-15279 (RMB),

2019 WL 5617508, at *7 (D.N.J. Oct. 31, 2019) ("[I]t is well settled that a disability 'is not

---

manufacture support for the ALJ's step two finding. *Plaintiff's Reply Brief*, ECF No. 13, pp. 3–4. Notably, Plaintiff concedes that it was the Acting Commissioner—not the ALJ—who argued that Consultant Nicastro "determined that Plaintiff did not demonstrate a severe impairment." *Id*. (internal quotation marks omitted). Accordingly, Plaintiff's attempt to impute the Acting Commissioner's characterization of Consultant Nicastro's opinion to the ALJ is unavailing where the ALJ's recitation of and consideration of that opinion as detailed above is proper.

determined merely by the presence of a diagnosed impairment, but by the effect that the impairment has upon the individual's ability to perform substantial gainful activity.'") (quoting *Van Mook v. Astrue*, 2011 WL 3875527, at *2 (W.D. Pa. Aug. 31, 2011) (cleaned up); *Estevez v. Comm'r of Soc. Sec.*, No. CV 16-1916 (SDW), 2016 WL 7165715, at *7 (D.N.J. Dec. 8, 2016) ("While Plaintiff's progress notes indicated she was diagnosed with osteoarthritis, the record failed to demonstrate that her ability to do basic work activities was limited by the impairment. . . . As precedent dictates, a diagnosis is insufficient to prove disability.") (citations omitted). Other than his subjective statements included in his hearing testimony, which the ALJ properly discounted, Plaintiff points to no evidence that this condition caused any work-related limitations. *See generally Plaintiff's Brief*, ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 13. Accordingly, the ALJ's consideration of this evidence and discussion—combined with the lack of treatment and objective findings in the record—belie Plaintiff's assertion that the ALJ played doctor when concluding that Plaintiff's lumbar spine impairment was not severe. Plaintiff has not shown that the ALJ erred in this respect. *See Salles*, 229 F. App'x at 145; *Newell*, 347 F.3d at 546.

Plaintiff next argues that his left foot impairment was more than a "slight" abnormality. *Plaintiff's Brief*, ECF No. 8, p. 13. In support, Plaintiff points to the surgical removal of a giant cell tumor from his left foot in 2018, at which time his surgeon "advised that he may still suffer from permanent numbness." *Id*. (citing R. 343). Plaintiff also points to his hearing testimony that his foot feels worse since the surgery. *Id*. (citing R. 66). Plaintiff has not persuaded this Court that any issues with his left foot constitute a severe impairment. The ALJ expressly considered that Plaintiff had arthritis in his left foot and that a mass had been successfully excised from that foot in May 2018. R. 20. In the operative report, it is true that the surgeon warned that Plaintiff

14

"*may* have permanent numbness after surgery[,]" R. 343 (emphasis added), and the ALJ noted

Plaintiff's testimony that he experienced foot pain when walking. R. 20. However, the record

reflects no documented numbness or other foot-related difficulty. As the ALJ observed, "no

subsequent follow-up [for Plaintiff's left foot] is noted in the record[,]" R. 20, and later records

reflected, *inter alia*, "normal ambulation and normal activities of daily living" and "full range of

motion and steady gait with normal 5/5 strength[.]" *Id*. Based on this record, the Court is not

persuaded that any issue with Plaintiff's left foot constituted a severe impairment. *See Salles*, 229

F. App'x at 145; *Newell*, 347 F.3d at 546; *cf. Gloria v. Berryhill*, 272 F. Supp. 3d 643, 655 (D.

Del. 2017) ("In finding [the claimant's] testimony not entirely credible, the ALJ reasonably

considered the objective medical evidence showing that [the claimant] had normal muscle

strength, normal sensation, normal reflexes, and a normal gait.").

Plaintiff also argues that his right hand[7] impairment is severe. *Plaintiff's Brief*, ECF No.

8, pp. 13–14. Plaintiff points out that a December 2020 examination of his right hand revealed a

bony deformity to the right third metacarpal ("MCP"), *id*. (citing R. 429–30), and a diagnosis of

osteoarthritis of the right hand which he,said was "characterized by difficulty grasping objects or

controlling hand and finger movements," *id*. at 14 (citing R. 430, 434). Plaintiff also refers to his

testimony that he is unable to grip small objects or close his dominant right hand. *Id*. (citing R.

68). In considering Plaintiff's allegations of hand pain, the ALJ stated:

> Regarding any allegations of hand pain, notes from Trinitas Regional Medical
> Center in July 2020 noted that the claimant presented with laceration to his left
> lateral forearm. The claimant reported that he had been using a razor knife at work
> and accidentally cut his forearm. The claimant reported being left hand dominant

---

[7] The record contains conflicting evidence as to whether Plaintiff is right-hand or left-hand
dominant. R. 19 ("[Plaintiff] testified that he has issues with using his right dominant hand."), 20
("The claimant reported being left hand dominant[.]"), 68 ("Q And are you right-handed or left-
handed?" A Right-handed."), 391 ("Patient is left hand dominant."), 392 ("Patient is left hand
dominant.").

and he denied any numbness, tingling or weakness. His wound was cleaned and a band-aid was applied. He was discharged the same day with normal ambulation and normal activities of daily living (Exhibit 5F/6-11, 15). The claimant was seen again at Trinitas on July 23, 2020, for evaluation after a fall but he reported no issues with back, neck or joint pain (Exhibit 5F/24). He was documented to have full range of motion and a steady gait with normal 5/5 strength (Exhibit 5F/26). On December 30, 2020, the claimant was seen again at Trinitas with complaints of right hand pain. The claimant denied any trauma or injury but he reported right hand pain when he grasped items. No other complaints were noted by the claimant but he requested documentation to bring to work. Full range of motion was noted in his entire right upper extremity and imaging showed no fracture or dislocation. His diagnosis was osteoarthritis of the hand (Exhibit 5F/39, 45-48 [R. 421, 427–30]).

R. 20; *see also* R. 428 ("62-year-old male with no PMH complaining of right dorsal hand pain for the past couple of days. Patient states he only has pain when he grips an object. States he came to the ED because he needs documentation to bring to work. Denies trauma, decreased ROM, weakness, paresthesia, nausea, vomiting."), 429 (reflecting, *inter alia*, "[b]ony deformity noted to the right 3rd MCP, no overlying erythema or warmth. Callus noted to the right ventral hand over the 4th MCP joint. No deformity, swelling, ecchymosis, or warmth to the entire right hand. Full ROM of the entire right upper extremity" and that Plaintiff complains "of right hand pain when gripping objects only for the past couple of days. Denies known trauma or associated decreased ROM, weakness, or paresthesia"), 430 ("X-ray of the right hand with prominent osteophytes in the proximal aspect of the 3rd metacarpal with associated soft tissue prominence, no acute fracture dislocation" and diagnosis of osteoarthritis of the hand). As previously discussed, the ALJ properly discounted the intensity and limiting effects of Plaintiff's subjective complaints on the ground that such complaints were not supported in the record. R. 20. Notably, the record above establishes that Plaintiff sought no further treatment of his right hand and the record does not reflect objective evidence reflecting any limitations flowing from this condition. As this Court has already explained, a diagnosis is not, by itself, sufficient to establish that an

impairment is severe. *See Salles*, 229 F. App'x at 145. For these reasons Plaintiff has not shown that the ALJ erred in finding no severe impairment of Plaintiff's right hand.

Finally, in continuing to attack the ALJ's denial of benefits at step two, Plaintiff argues that the ALJ failed in her duty to fairly and fully develop the record, which exists even when a claimant, like Plaintiff, is represented by counsel. *Plaintiff's Brief*, ECF No. 8, p. 16; *Plaintiff's Reply Brief*, ECF No. 13, pp. 2–3. Plaintiff specifically contends that Dr. Nicastro's finding of insufficient evidence to assess the severity of Plaintiff's condition supports his argument that the ALJ did not properly develop the record and that the lack of opinion evidence "only underscores the need for a consultative examination in this case." *Id*. Plaintiff's arguments are not well taken.

"ALJs have a duty to develop a full and fair record in social security cases." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). However, the "burden lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (citations omitted). Moreover, where a claimant is represented by counsel, the claimant's counsel is "responsible for ensuring that the ALJ was aware of any facts favorable to [the claimant's] claim for benefits." *Turby v. Barnhart*, 54 F. App'x 118, 122 (3d Cir. 2002).

An ALJ retains the discretion, but not the duty, to order a consultative examination. *See* 20 C.F.R. § 416.920b(b)(2)(iii) ("If the evidence in your case record is insufficient or inconsistent, we . . . *may* ask you to undergo a consultative examination at our expense[.]") (emphasis added); *see also Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002) ("The decision to order a consultative examination is within the sound discretion of the ALJ[.]"); *Woodside v. Berryhill*, No. CV 18-10, 2019 WL 4140993, at *1 (W.D. Pa. Aug. 30, 2019) ("As the decision to order a consultative examination is within the sound discretion of the ALJ, the

Court finds that the ALJ did not err in finding that the record was sufficient to render a decision here without the need to order a consultative examination."); *Haganey v. Comm'r of Soc. Sec.*, No. CV 17-7944, 2019 WL 192901, at *2 (D.N.J. Jan. 15, 2019) ("Plaintiff cites to no Third Circuit case law or authority to support the argument that the ALJ was required to order the consultative examination. The record was sufficient for the ALJ to make a proper determination. Thus, the ALJ was not required to send Plaintiff for a consultative examination and acted within his discretion."); *Reliford v. Comm'r of Soc. Sec.*, No. CV 16-457, 2017 WL 2829604, at *9 (D.N.J. June 30, 2017) (rejecting the plaintiff's argument that the ALJ was required to order a consultative examination or recontact treating sources and stating, "Plaintiff is incorrect that the ALJ 'was under a duty' to further develop the record through any particular method").

In the present case, the Court has already discussed that the record reflects, *inter alia*, no follow-up treatment for Plaintiff's impairments or other objective evidence related to the severity of these impairments, including, *inter alia*, any evidence of functional limitations flowing from these impairments. For the reasons set forth above, the record in this action provides substantial support for the ALJ's step two findings and the ALJ did not err in failing to order a consultative examination.

In addition, Plaintiff's complaint that the ALJ should have further developed the record is particularly ironic given that Plaintiff—who bears the burden of proof at steps two through four of the sequential evaluation process—failed to respond to and/or fully cooperate with state agency's inquiries regarding his conditions. R. 79 ("CLMT NOT RESPONSIVE TO ATTEMPTS TO CONTACT."), 83 (reflecting, *inter alia*, "attempted to call claimant, claimant's 3rd party contact and attorney rep regarding return of ADL's, *no answer*" and "[a]dditional

18

evidence is needed to fully assess the severity of the claimant's condition but the *claimant has failed to cooperate*."); *see also Smith*, 631 F.3d at 634; *Salles*, 229 F. App'x at 145.

Moreover, Plaintiff's "challenge to the ALJ's development of the medical record is further weakened by the fact that he was represented by counsel at the administrative hearing." *Johnson v. Comm'r of Soc. Sec.*, No. CV 20-3111, 2021 WL 2661544, at *8 (E.D. Pa. June 29, 2021); *see also* R. 52–76 (reflecting that counsel represented Plaintiff at the administrative hearing); *Turby*, 54 F. App'x at 122. The ALJ had "no enhanced duty to develop the administrative record" where Plaintiff was represented by counsel at that hearing and his counsel was responsible for sharing with the ALJ any facts favorable to Plaintiff's claim. *Id.* (citations and internal quotation marks omitted); *see also Turby*, 54 F. App'x at 122. In the present case, Plaintiff's counsel specifically stated at the administrative hearing that the record was complete. R. 56, 58. Accordingly, under all these circumstances, the ALJ was "entitled to assume that the claimant [wa]s making the strongest case possible for benefits." *Myers v. Berryhill*, 373 F. Supp. 3d 528, 539 (M.D. Pa. 2019); *cf. Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155, 158 (3d Cir. 2008) ("While a claimant represented by counsel is presumed to have made his best case before the ALJ, no such presumption attaches to an unrepresented claimant.") (citations and internal quotation marks omitted).

In short, Plaintiff has not shown that this record establishes that the ALJ erred when finding that none of Plaintiff's impairments were severe at step two or that remand is otherwise required.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Acting Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  April 29, 2025                                  *s/Norah McCann King*
                                               NORAH McCANN KING
                                    UNITED STATES MAGISTRATE JUDGE